FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 13, 2025

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ONSHORE QUALITY CONTROL SERVICES, LLC,<br><br>                              Plaintiff,<br><br>     -vs-<br><br>STEVEN BROMLEY,<br><br>                              Defendant. | No.    4:24-CV-5134-RLP<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS |

Before the Court is Defendant Steven Bromley's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) (ECF No. 5). The matter was submitted to the court without oral argument on January 10, 2025. For the reasons set forth below, the motion to dismiss (ECF No. 5) is **DENIED**.

## BACKGROUND

### 1. Pre-complaint demand letters

On September 10, 2024, counsel for Mr. Steven Bromley sent a demand letter to counsel for Plaintiff Onshore Quality Control Specialists (Onshore), alleging five violations of Washington's Silenced No More Act (SNMA), RCW 49.44.211, as well as violations of Washington's Law Against Discrimination (WLAD), RCW Ch. 49.60. The demand letter asserted that the SNMA claims were subject to statutory damages of $10,000 per violation plus attorney fees and costs. *See* RCW 49.44.211(7). The letter did not specify an amount of damages related to the WLAD claim.

ORDER GRANTING MOTIONS TO
QUASH - 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mr. Bromley's demand letter asserted that "litigation can be an expensive, lengthy, and time consuming process." ECF No. 5-1 at 12. According to the letter, Mr. Bromley wanted to "resolve his SNMA claims … in an efficient and speedy manner." *Id*. at 12-13. "To that end," counsel stated Mr. Bromley was willing to settle the matter for $100,000. *Id*. The letter warned that if the matter "proceeds to litigation, attorneys' fees and costs will be awarded under both the SNMA and WLAD." *Id*. The demand letter gave Onshore 10 days to respond.

Counsel for Onshore responded to the demand letter on October 3, 2024. The response letter denied Mr. Bromley's legal allegations and rejected the offer of settlement.

Counsel for Mr. Bromley issued a reply letter to Onshore's counsel on October 18, 2024. The letter began by stating that "[i]n light of" Onshore's rejection of the offer of settlement, Mr. Bromley had advised counsel to "withdraw the settlement offer and proceed with filing a lawsuit based on claims identified" in the September 10, 2024 letter. *Id*. at 19. The reply letter went on to address the merits of Mr. Bromley's SNMA claims but does not make specific reference to the WLAD.

In its concluding paragraph, the reply letter stated Mr. Bromley would "proceed with filing a lawsuit in accordance with Washington law, including claims under the Silenced No More Act (SNMA)." *Id*. at 21. The final two sentences of the reply letter stated as follows: "Finally we believe the conduct of Onshore QCS violates other Washington law, as explained in detail in our September 10, 2024 letter. Based on that prior letter and the foregoing, we are prepared to move forward with litigation on these grounds." *Id*.

## 2. Complaint and procedural history

Onshore filed the instant Complaint in the U.S. District Court for the Eastern District of Washington on October 25, 2024, The Complaint seeks a declaratory judgment addressing the merits of Mr. Bromley's claims under the SNMA and the WLAD. The Complaint asserts jurisdiction under 28 U.S.C. § 1332(a), based on the parties' diversity of

ORDER GRANTING MOTIONS TO
QUASH - 2

citizenship and an amount in controversy exceeding $75,000. In explaining the amount in controversy, the Complaint cites Mr. Bromley's $100,000 demand for damages.

Mr. Bromley has not filed an answer to the Complaint. On November 19, 2024, Mr. Bromley filed suit against Onshore in Benton County Superior Court, alleging five violations of the SNMA. The complaint did not allege any violations of the WLAD. The Benton County complaint did not request a specific dollar amount in its prayer for relief.

The day after filing his complaint in Benton County Superior Court, Mr. Bromley filed a motion to dismiss Onshore's complaint. ECF No. 5. In the motion, Mr. Bromley asserts the court lacks diversity jurisdiction because Onshore lacks a good faith basis for asserting an amount in controversy exceeding $75,000 as required by 28 U.S.C. § 1332(a). Onshore disputes Mr. Bromley's argument and requests the motion to dismiss be denied. The matter has been fully briefed and is ripe for disposition.

ANALYSIS

In cases involving diversity of parties, federal district courts have original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). "The amount in controversy is normally determined from the face of the pleadings." *Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*, 802 F.2d 362, 363 (9th Cir. 1986). In cases originally brought in federal court—as opposed to ones involving a request for removal—"the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288, 58 S.Ct. 586, 82 L.Ed. 845 (1938). "It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Id*. at 289.

The parties do not dispute that Onshore's Complaint facially complies with the $75,000 threshold for diversity jurisdiction. Although Onshore's complaint seeks declaratory relief instead of damages, "it is well established that" in such circumstances "the amount in controversy is measured by the value of the object of the litigation." *Hunt*

*v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). Here, the Complaint states the object of the litigation is Mr. Bromley's demand for $100,000 in civil damages. This is sufficient for facial validity.

Despite the Complaint's facial validity, Mr. Bromley argues the requirement for diversity jurisdiction is not met because Onshore's recitation of the amount in controversy was not made in good faith. Mr. Bromley recognizes he issued a demand letter to Onshore alleging violations of the SNMA and the WLAD and offering to settle for $100,000. However, he asserts $100,000 was an inflated value. Furthermore, he claims he abandoned his WLAD claim in his October 18 reply letter and the November 19 superior court complaint. According to Mr. Bromley, without the WLAD allegations, his claims against Onshore cannot meet the $75,000 diversity jurisdiction threshold because SNMA claims are limited to $10,000 per claim and he has only asserted five claims. *See* RCW 49.44.211(7).

Mr. Bromley's arguments are not supported by the record. The Court may look to extrinsic evidence, including settlement letters, in determining the amount in controversy. *Cohn v. Petsmart*, 281 F.3d 837, 840 (9th Cir. 2002). The extrinsic evidence supports Onshore's claim of jurisdiction.

Contrary to Mr. Bromley's protestations, the September 2024 demand letter identified a nonspeculative basis for calculating the amount in controversy as $100,000. In the demand letter, Mr. Bromley's attorney represented that a $100,000 settlement would facilitate an "efficient and speedy" resolution of his "SNMA claims." ECF No. 5-1 at 13. The letter warned that "if this matter proceeds to litigation, attorneys' fees and costs will be awarded under both the SNMA and WLAD." *Id*. This language chosen by defense counsel conveyed Mr. Bromley's belief that a modest valuation of the SNMA claims was $100,000 and that if the matter proceeded to litigation on additional claims, including claims under the WLAD, the value would be higher. It was not unreasonable for Onshore to take Mr. Bromley at his word in assessing the amount in controversy. The Court disagrees with Mr. Bromley that the $100,000 figure was obviously inflated.

ORDER GRANTING MOTIONS TO
QUASH - 4

The Court also disagrees with Mr. Bromley's argument that the wording of the October 18 reply letter showed he had abandoned his WLAD claims. The reply letter does not mention the WLAD claims one way or another. Instead, the letter states Mr. Bromley had authorized counsel to "proceed with filing a lawsuit based on *claims* identified in our letter of September 10, 2024." ECF No. 5-1 at 19 (emphasis added). The unqualified use of the plural "claims" suggests the letter was referencing all previously asserted claims, including the WLAD claims. This interpretation is further supported by the letter's closing paragraph. In that paragraph, Mr. Bromley's attorney stated he would be proceeding with filing a lawsuit "in accordance with Washington law, *including* claims under the Silenced No More Act." ECF No. 5-1 at 21 (emphasis added). The word "including" suggests a lack of exclusivity. Furthermore, the penultimate sentence of the reply letter references "other" violations of Washington law. This again indicates Mr. Bromley did not intend to limit his claims to the SNMA.

The lack of a WLAD claim in Mr. Bromley's Benton County complaint fails to show abandonment. The Court notes the Benton County suit was not filed until after Onshore filed the instant Complaint. Thus, the Benton County complaint is not evidence that could support finding that Onshore had improperly inflated the value of the amount in controversy. But in addition, the lack of a WLAD claim in the Benton County complaint fails to show a WLAD claim could not be raised at some point in the future.

Finally, even if Mr. Bromley had abandoned his WLAD claim, Onshore would still have a good faith basis for asserting an amount in controversy exceeding $75,000. According to Mr. Bromley, his SNMA claims are valued at $50,000 ($10,000 in statutory damages per claim) plus a statutory award of attorney fees. RCW 49.44.211(7). An award of statutory attorney fees "can be taken into account in determining the amount in controversy." *Goldberg v. CPC Intern. Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982). It is not implausible that if the SNMA claims were to go to trial, Mr. Bromley could expend over $25,000 in attorney fees, thus raising his claim above the $75,000 threshold. Under Washington law, attorney fee awards are assessed using the lodestar methodology, which

takes into account the number of hours reasonably expended on a case, not the amount of recovery. *See, e.g., Zink v. City of Mesa*, 17 Wash. App. 2d 701, 714-15, 487 P.3d 902 (2021).

The Court recognizes that it is possible that the amount in controversy between the parties is less than $75,000. But that is not the test. Rather, the question is whether the record demonstrates to a legal certainty that the amount in controversy fails to meet the $75,000 threshold. It does not Accordingly, Mr. Bromley's Motion to Dismiss (ECF No. 5) must be **DENIED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and provide copies to counsel.

**DATED** January 13, 2025.

REBECCA L. PENNELL
DISTRICT COURT JUDGE

ORDER GRANTING MOTIONS TO
QUASH - 6