FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 26, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ONSHORE QUALITY CONTROL SPECIALISTS, LLC, a Texas limited liability company, | No. 4:24-CV-05134-RLP |
| Plaintiff, | ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT |
| v. | |
| STEVEN BROMLEY, an individual, | |
| Defendant. | |

Before the Court are Defendant Steven Bromley's Motion for Summary Judgment, ECF No. 22, and Plaintiff Onshore Quality Control Specialists, LLC's (QCS) Motion for Summary Judgment, ECF No. 29. Defendant is represented by Nathan Robin Viavant. Plaintiff is represented by Lauren S. Titchbourne and Laurence A. Shapero. Both parties request partial summary judgment on their respective declaratory judgment claims. This matter was submitted for consideration without oral argument. The Court has reviewed the briefing and the record and files herein and is fully informed.

ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT * 1

1      For the reasons discussed below, Mr. Bromley's motion is denied, and

2  QCS's motion is granted.

3                            BACKGROUND

4       Prior to 2021, Mr. Bromley worked as a third-party Chief Inspector for TC

5  Energy through QCS under a joint employment agreement. ECF Nos. 23-1, ¶2; 26,

6  ¶3. After Mr. Bromley reported pipeline integrity issues to a federal agency in

7  2021, he alleges TC Energy and QCS ceased communications with him and

8  stopped providing him work. ECF No. 23-1, ¶3. Mr. Bromley responded by filing a

9  whistleblower complaint with the Occupational Safety and Health Administration.

10 *Id.*, ¶5. He was not represented by counsel during the initial proceedings in this

11 matter. *Id.*, ¶6.

12      After mediation, QCS's counsel Hannah Parks had a phone call with Mr.

13 Bromley wherein he agreed to a $50,000 settlement payment in exchange for a full

14 release of claims, and confidentiality, no-rehire, and non-disparagement

15 provisions. ECF Nos. 22-2 at 31; 26, ¶4. Ms. Parks then began the process of

16 drafting a written Settlement Agreement. *See* ECF No. 22-2 at 65. After a month of

17 back and forth between Mr. Bromley and Ms. Parks, Mr. Bromley began asserting

18 the Settlement Agreement violated Washington's Silenced No More Act (SNMA),

19 RCW 49.44.211. *Id.* at 85. Mr. Bromley demanded an additional settlement

20 payment to release his new SNMA claims. *Id.* at 98. Ms. Parks stated her intent

ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT * 2

1  was for the Settlement Agreement to not interfere with Mr. Bromley's rights under

2  the SNMA, and refused to modify the terms of the previously agreed oral

3  settlement. *Id*.

4     Ms. Parks subsequently provided Mr. Bromley another draft of the

5  Settlement Agreement (the fourth such draft provided to him). *Id*. at 54-58. The

6  draft provided, in relevant part:

7     2. Employee's Agreements . . .

8     (a)  Full Release of Claims: Employee hereby waives,
   unconditionally, irrevocably and absolutely releases and discharges any and
9  all rights or claims of any kind that Employee may have, to the fullest extent
   permitted by law . . . from the beginning of time to the date on which both
10 Employee and Company have signed this Agreement, against the Company.

11    . . .

12    This waiver and release is intended to have the broadest possible
   application and includes, but is not limited to, any and all obligations, duties,
13 omissions, liabilities, injuries, damages, causes of action, demands, losses,
   costs, and expenses of every name, kind or nature whatsoever from any
14 rights or claims, whether known or unknown, and whether vested or
   unvested, suspected or unsuspected, of any sort, and whether arising in tort,
15 equity, contract, regulatory law or jurisdiction, or otherwise, that Employees
   may have under any tort, contract, common law, constitutional or other state,
16 federal, city, county, or local statute . . . and all other local, state or federal
   laws . . . or any claims of breach or violation of public policy . . . or any
17 other claims or rights to damages, whether contractual, statutory, liquidated,
   compensatory, exemplary, or punitive, or rights to or claims . . . which
18 Employees have or might have by virtue of any fact(s), act(s) or event(s)
   occurring prior to the effective date of this Agreement (the "Released
19 Claims").

20    Employee understands that they are releasing claims they may not
   know about now, but it is their specific knowing and voluntary intent to

ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT * 3

release those claims.

It is the intent of this Agreement and Release to forever end any and all controversies of every kind and character whatsoever that Bromley may have against any Released Party that exists as of the date of this Agreement, except those set forth or reserved by this Agreement. Employee expressly waives Employee's right to recovery of any type, including damages or reinstatement, in any administrative or court action, whether state or federal. . . . Employee agrees not to start any proceedings of any kind against the Released Parties relating in any way to the Released Claims. . . . Employee declares and represents that they intend this Agreement to be complete and not subject to any claim of mistake, and that the release herein expresses a full and complete release and that they intend the release herein to be final and complete. Notwithstanding the foregoing, Employee agrees and acknowledges that, except for the allegations and claims already raised by him and released by this Agreement, that he is not aware of any additional actions or inactions by Released Parties that he believes constitutes any wrongdoing or unlawful activities.

. . .

(b) <u>Final Releases</u>. Nothing in this Agreement is intended to or shall be construed to interfere in any way with Employee providing truthful information or assistance to any other federal, state, or local government agency as a result of a court order compelling disclosure. **Further, nothing in this Agreement is intended to interfere with or prohibit Employee's rights under the Washington Silenced No More Act RCW 49.44.211**. To the extent an action or proceeding may be brought by any federal, state, or local government agency with respect to any alleged acts or omissions <u>prior to</u> Employees' execution of this Agreement, Employee expressly acknowledges and agrees that Employee has relinquished any entitlement to, and will not accept, any form of monetary or other damages or any other form of relief in connection with any such complaint, charge action, or proceeding.

. . .

(c) <u>Confidentiality of this Agreement: Non-Disparagement</u>. You agree that you will not disclose to others the existence or terms of this Agreement, except to your immediate family, attorneys and bona fide financial advisors

ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT * 4

and then only after securing the agreement of such individual(s) to maintain the confidentiality of this Agreement. You also agree that you will not at any time make disparaging or derogatory statements concerning the Company or its business, products and services. <u>Nothing in this section is intended to, and shall not, restrict or limit you from exercising your protected rights described in Section 2(b) or restrict or limit you from providing truthful information in response to a subpoena, or other legal process or valid governmental inquiry.</u>

. . .

      (e) <u>No Re-Hire</u>: Employee represents that he does not desire to be re-hired with Company or any other Released Part, and hereby expressly waives any and all rights, if any, that Employee may have to employment or consideration for employment with Company or the other Released Parties. Furthermore, Employee agrees to never again knowingly seek or accept employment or a direct independent contractor relationship with Company or the Released Parties.

*Id*. (underline in original, emphasis added in bold). Mr. Bromley did not immediately sign this draft of the Agreement. ECF No. 23, ¶18.

Mr. Bromley retained counsel, Kevin Roberts, who in an email to Ms. Parks staked out his position that the confidentiality and non-disparagement clauses were illegal in Washington. ECF No. 22-2 at 106. In a letter to an ALJ, Mr. Roberts repeated this position and also asserted that the No Re-Hire provision violated Washington's Law Against Discrimination (WLAD), ch. 49.60 RCW. *Id*. at 114-16. As the parties continued to negotiate over the Settlement Agreement, Mr. Parks provided Mr. Bromley and Mr. Roberts a fifth draft which explicitly listed SNMA claims as being released under section 2(a) "Full Release of Claims." *Id*. at 125-28. Mr. Roberts repeatedly asserted that Mr. Bromley would not waive the protections

1    of the SNMA. *Id*. at 131, 135. Ms. Parks replied that her intent was for the

2    Settlement Agreement to be a "clean walk away." *Id*. at 131.

3        Mr. Bromley then terminated Mr. Roberts' representation and signed the

4    prior, fourth draft Settlement Agreement. ECF No. 23, ¶25. Ms. Parks signed the

5    agreement on QCS's behalf and provided Mr. Roberts with the $50,000 settlement

6    payment. ECF Nos. 22-2 at 140-44; 23, ¶25; 26, ¶6.

7        On September 10, 2024, Mr. Bromley sent QCS a demand letter. ECF No.

8    26-2. In the letter, Mr. Bromley asserted QCS and Ms. Parks violated the SNMA

9    on five instances during the negotiation of the Settlement Agreement, and that he

10   was entitled to $10,000 for each violation. *Id*. Mr. Bromley also contended that the

11   No Re-Hire provision violated WLAD. *Id*. Mr. Bromley demanded $100,000 from

12   QCS within 10 business days to resolve the controversy. *Id*.

13       After the deadline passed, QCS initiated the instant action on October 25,

14   2024. ECF No. 1. QCS asks for declaratory judgments that Mr. Bromley has no

15   valid claims under the SNMA or WLAD stemming from the Settlement

16   Agreement. *Id*. at 3-4. QCS also asserts a claim for unjust enrichment. *Id*. at 4-5.

17   Mr. Bromley filed an Answer and Counterclaims on January 27, 2025. ECF No.

18   11. He asserts five causes of action for violation of the SNMA arising from the

19   Settlement Agreement. *Id*. at 11-14. He also asks for declaratory judgment that

20

ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT * 6

1  under the Settlement Agreement he is entitled to damages, attorney fees, and costs

2  under the SNMA. *Id*. at 14.

### ANALYSIS

4      Summary judgment will be granted if the moving party "shows that there is

5  no genuine dispute as to any material fact and the movant is entitled to judgment as

6  a matter of law." FRCP 56(a). In ruling on a motion for summary judgment, the

7  Court views the evidence and inferences therefrom "in the light most favorable to

8  the adverse party". *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920

9  (9th Cir. 2008) (quoting *Jones v. Halekulani Hotel, Inc.*, 557 F.2d 1308, 1310 (9th

10 Cir. 1977)). "A fact issue is genuine 'if the evidence is such that a reasonable jury

11 could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air,*

12 *Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*,

13 477 U.S. 242, 248, 106 S.Ct. 2505 (1986)).

14     The parties move for summary judgment on their respective declaratory

15 judgment claims. The Declaratory Judgment Act allows a court to recognize a

16 parties' rights even where no immediate enforcement is sought, and further relief

17 based on the declaratory judgment may be granted whenever necessary or proper.

18 *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 300, 63 S.Ct. 1070

19 (1943). Where a district court sits in diversity jurisdiction, the construction and

20 validity of a settlement and release agreement is a question of state contract law.

ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT * 7

*Golden v. California Emergency Physicians Med. Grp.*, 782 F.3d 1083, 1087 (9th Cir. 2015).

### 1. SNMA Claims

Both parties ask the Court to issue a declaration as to whether Mr. Bromley can assert SNMA claims which accrued during the negotiation of the Settlement Agreement. Mr. Bromley contends that section 2(b) of the Settlement Agreement, which provides that "nothing in this Agreement is intended to interfere with or prohibit Employee's rights under the Washington Silenced No More Act RCW 49.44.211," means he did not release his right to pursue his SNMA claims. QCS contends that the plain language of the Settlement Agreement and the conduct of the parties demonstrate Mr. Bromley released his SNMA claims.

Under Washington law, settlement and release agreements are contracts governed by general principles of contract law. *Evans & Son, Inc. v. City of Yakima*, 136 Wn. App. 471, 477, 149 P.3d 691 (2006). "Washington follows the 'objective manifestation theory' of contract interpretation, under which the focus is on the reasonable meaning of the contract language to determine the parties' intent." *Silvey v. Numerica Credit Union*, 23 Wn. App. 2d 535, 545, 519 P.3d 920 (2022). Contracts are interpreted as a whole, with particular language interpreted in the context of other contract provisions. *Id*. "An ambiguous provision is one fairly susceptible to two different, reasonable interpretations." *Id*. "A contract is not

ambiguous simply because the parties suggest opposing meanings." *Id*. Clear and

unambiguous terms are interpreted as a matter of law. *Id*. "If only one reasonable

meaning can be ascribed to the agreement when viewed in context, that meaning

necessarily reflects the parties' intent; if two or more meanings are reasonable, a

question of fact is presented." *Martinez v. Miller Industries, Inc.,* 94 Wn. App. 935,

943, 974 P.2d 1261 (1999).

Washington's SNMA provides:

> A provision in an agreement by an employer and an employee not to
> disclose or discuss conduct, or the existence of a settlement involving
> conduct, that the employee reasonably believed under Washington state,
> federal, or common law to be illegal discrimination, illegal harassment,
> illegal retaliation, a wage and hour violation, or sexual assault, or that is
> recognized as against a clear mandate of public policy, is void and
> unenforceable.

RCW 49.44.211(1). The SNMA creates a private cause of action for violations of

the law. RCW 49.44.211(7).

The Settlement Agreement is unambiguous. Section 2(a) "Full Release of

Claims" unequivocally states that Mr. Bromley "waives, unconditionally,

irrevocably and absolutely releases and discharges any and all rights or claims of

any kind that [he] may have . . . from the beginning of time to the date on which

both Employee and Company have signed this Agreement." ECF No. 22-2 at 140.

Section 2(a) states the Settlement Agreement "is intended to have the broadest

possible application and includes . . . any rights or claims" that Mr. Bromley "may

ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT * 9

have under any . . . state, federal, city, county, or local statute . . . and all other local, state or federal laws . . .  or any claims of breach or violation of public policy . . . or any other claims or rights to damages . . . [including] statutory." *Id*. at 141. This section also repeatedly states that Mr. Bromley waives and releases any and all claims he may have had at the time he signed the Settlement Agreement. *Id*. at 140-41.

The unambiguous intent expressed by all these clauses is for Mr. Bromley to release any legal claims, including statutory claims arising under state law (e.g., the SNMA) he had at the time he executed the Settlement Agreement. This includes any SNMA claims stemming from the negotiation of the Settlement Agreement prior to its execution.

Mr. Bromley's argument hinges on section 2(b), titled "Final Releases." *Id*. at 142. That section provides

> Nothing in this Agreement is intended to or shall be construed to interfere in any way with Employee providing truthful information or assistance to any other federal, state, or local government agency as a result of a court order compelling disclosure. **Further, nothing in this Agreement is intended to interfere with or prohibit Employee's rights under the Washington Silenced No More Act RCW 49.44.211.** To the extent an action or proceeding may be brought by any federal, state, or local government agency with respect to any alleged acts or omissions prior to Employees' execution of this Agreement, Employee expressly acknowledges and agrees that Employee has relinquished any entitlement to, and will not accept, any form of monetary or other damages or any other form of relief in connection with any such complaint, charge action, or proceeding.

*Id*. (underline in original, emphasis in bold). Mr. Bromley reads the bolded

ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT * 10

sentence above in isolation to mean the Settlement Agreement was not intended to interfere with his statutory right to sue for violations of the SNMA. When this sentence is read in context of the entire paragraph, and the Settlement Agreement as a whole, it is clear Mr. Bromley's interpretation is untenable. The preceding sentence concerns the disclosure of information. The use of the word "Further" at the beginning of the next sentence demonstrates that the preservation of rights also relates to the disclosure of information.

Section 2(c) "Confidentiality of this Agreement: Non-Disparagement" further demonstrates that the sentence in section 2(b) relates to the disclosure of information. *Id*. at 143. With respect to disclosures of information, section 2(c) clarifies that "Nothing in this section is intended to, and shall not, restrict or limit you from exercising your protected rights described in Section 2(b)." *Id*. at 143 (underline in original). This clause underlines that the protected rights in section 2(b), including Mr. Bromley's rights under the SNMA, are those related to disclosure of information.

When the SNMA clause in section 2(b) is read in context of the broad "Full Release of Claims" contained in section 2(a), and section 2(c)'s reference to Mr. Bromley's "protected rights" to the disclosure of information provided in 2(b), it is clear that "rights under the Washington Silenced No More Act RCW 49.44.211" refers to Mr. Bromley's statutory right under RCW 49.44.211 to disclose or discuss

1    conduct, or the existence of a settlement involving conduct, that he reasonably

2    believed constituted illegal retaliation. It does not refer to the preservation of

3    SNMA claims, as these are statutory claims released in section 2(a).

4         Even where contractual language is unambiguous, under Washington law

5    courts "may consider extrinsic evidence for the limited purpose of determining the

6    intent of the parties." *Paradise Orchards Gen. P'ship v. Fearing*, 122 Wn. App.

7    507, 517, 94 P.3d 372 (2004). "Admissible extrinsic evidence does not include (1)

8    evidence of a party's unilateral or subjective intent as to the meaning of a contract

9    word or term, (2) evidence that would show an intention independent of the

10   contract, or (3) evidence that varies, contradicts or modifies the written language of

11   the contract." *Bort v. Parker*, 110 Wn. App. 561, 574, 42 P.3d 980 (2002).

12        As discussed above, the Settlement Agreement is not ambiguous.

13   Regardless, the conduct of the parties demonstrates that the only reasonable

14   interpretation of the Settlement Agreement is a that the full release of claims

15   includes Mr. Bromley's SNMA claims.

16        Prior to the fourth (and ultimately final) draft of the Settlement Agreement,

17   Mr. Bromley raised his belief that he had valid SNMA claims to QCS's attorney

18   Ms. Parks. Ms. Parks refused to provide Mr. Bromley additional consideration for

19   a release of these claims, and presented the fourth draft agreement which, as

20   discussed above, unambiguously released any SNMA claims Mr. Bromley had.

Through his attorney Mr. Roberts, Mr. Bromley continued to negotiate for the preservation of his SNMA claims. In turn, Ms. Parks insisted on a full release of claims, including Ms. Bromley's SNMA claims. Mr. Bromley then reversed course and signed the fourth draft Settlement Agreement he previously complained released his SNMA claims. This demonstrates Mr. Bromley's awareness that the Settlement Agreement released his SNMA claims, and that he knowingly agreed to such a release.

At best, Mr. Bromley's argument demonstrates his subjective intent to not release his SNMA claims through an idiosyncratic interpretation of the Settlement Agreement. As discussed above, such an intent is contrary to the plain meaning of the Settlement Agreement, and parol evidence is inadmissible to further this goal.

Mr. Bromley also contends RCW 49.44.211 implies that SNMA claims cannot be released. He argues the SNMA's prohibitions on any attempt to seek an agreement which violates the SNMA could not be enforced if claims for such violations could be waived.

It is a violation of the SNMA for an employer to request or require an employee enter into such an agreement or to attempt to enforce, by legal action, threat thereof, or any other attempt at influencing compliance with, a prohibited provision. RCW 49.44.211(4), (5).

Mr. Bromley cites no law in support of his argument that SNMA claims may

not be released or waived, and the Court can find none. Mr. Bromley's apparently novel legal argument is unconvincing. Contrary to his position that allowing release of SNMA claims would make the SNMA unenforceable, the SNMA prevents employers from enforcing prohibited contractual provisions regardless of whether a private claim for damages has been released. Alternatively, if a claimant believes the SNMA has been violated during the negotiation of a settlement and release, he or she can choose to not agree to a full release of claims and pursue legal action instead. The record demonstrates Mr. Bromley pursued, and then rejected, this latter course of action.

Mr. Bromley's interpretation of the SNMA would lead to results contrary to expressed Washington policy. His argument would prevent parties from settling SNMA claims by preventing employers from obtaining a release. As a result, parties protected by the SNMA would be forced to spend time and money in litigation to obtain a judgment against an infringing employer in order vindicate their SNMA rights. In addition to making it more difficult for individuals to protect the rights granted to them under the SNMA, this outcome is contrary to Washington's strong public policy favoring the settlement of claims. *Elgiadi v. Washington State Univ. Spokane*, 24 Wn. App. 2d 261, 266, 519 P.3d 939 (2022).

As the plain language and conduct of the parties demonstrate that Mr. Bromley released any and all SNMA claims he had at the time he executed the

Settlement Agreement, the Court grants QCS's motion for partial summary judgment and denies Mr. Bromley's.

### 2. WLAD Claim

QCS also moves for a declaration that Mr. Bromley has no WLAD claim stemming from the Settlement Agreement's No Re-Hire provision, because QCS did not discriminate against him due to a protected status, or for reporting such discrimination. Mr. Bromley contends there is no justiciable dispute here, that the Court should decline to exercise jurisdiction over this claim, and that he can assert a WLAD claim for the No Re-Hire clause in the Settlement Agreement stemming from his retaliatory termination.

### Justiciability

Under the Declaratory Judgment Act, a district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought," but only "[i]n a case of actual controversy." 28 U.S.C. § 2201(a). The phrase "a case of actual controversy" refers to the types of "cases" and "controversies" that are justiciable under Article III of the Constitution, and thus, within the court's subject matter jurisdiction. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S.Ct. 764 (2007).

To determine the existence of a justiciable controversy under the Declaratory Judgment Act, courts must determine "whether the facts alleged, under

all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id*. The dispute must be "real and substantial" and "definite and concrete, touching the legal relations of parties having adverse legal interests." *Id*.

This case presents an actual, substantial controversy of sufficient immediacy and reality to warrant a declaratory judgment. Mr. Bromley's September 10 demand letter to QCS details a WLAD claim he believed he had against it. Mr. Bromley demanded QCS pay him $100,000 in 10 days or else he would "proceed accordingly." ECF No. 26-2 at 10. This demonstrates the existence of a real, substantial, and immediate controversy touching on the adverse legal relations of the parties. *See medspa810 Franchising LLC v. Strategic Franchise Reg'l Devs. LLC*, 2021 WL 2598259, at *7 (D. Ariz. May 3, 2021) (demand letter asserting claim demonstrates a substantial controversy of sufficient immediacy to warrant the issuance of a declaratory judgment); *Bitter v. Windsor Sec., LLC*, 2014 WL 1411219, at *4 (N.D. Cal. Apr. 11, 2014) (same).

Mr. Bromley contends there is no actual controversy as he has withdrawn his prior threat to assert a WLAD claim against QCS. The test for mootness in a declaratory judgment action "is whether changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for

ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT * 16

meaningful relief." *Gator.com Corp. v. L.L. Bean, Inc.,* 398 F.3d 1125, 1129 (9th Cir. 2005) (internal quotation marks omitted). "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. . . [I]f it did, the courts would be compelled to leave [t]he defendant . . . free to return to his old ways." *Friends of the Earth, Inc. v. Laidlaw,* 528 U.S. 167, 189, 120 S.Ct. 693 (2000) (internal quotations and citations omitted). "[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* at 190, 120 S.Ct. 693.

Mr. Bromley's assertion that he no longer intends to bring a WLAD claim does not forestall any occasion for meaningful relief. If the Court were to dismiss the claim for declaratory judgment, there would be nothing stopping Mr. Bromley from re-asserting his WLAD claim later. QCS's concern is well-founded. Despite Mr. Bromley releasing his SNMA claims in the Settlement Agreement, as described above, he nevertheless subsequently pursued these claims. Because Mr. Bromley's WLAD claim presents a real, substantial, and immediate controversy, QCS's request for declaratory judgment is justiciable.

//

ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT * 17

Brillhart *and* Dizol *Factors*

Mr. Bromley argues that even if the controversy is justiciable, the Court should nevertheless decline to exercise jurisdiction over QCS's declaratory judgment claim concerning WLAD.

District courts have "unique and substantial discretion" to decide whether to exercise jurisdiction over declaratory judgment claims. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S.Ct. 2137 (1995). "In determining whether to exercise its jurisdiction, the Court should consider the following [*Brillhart*] factors: (1) the avoidance of needless determinations of state law issues; (2) discouragement of forum shopping; and (3) avoidance of duplicative litigation." *Mid-Century Ins. Co. v. Zanco*, 456 F. Supp. 3d 1213, 1219 (E.D. Wash. 2020) (citing *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491, 495, 62 S.Ct. 1173 (1942)).

The first *Brillhart* factor concerns needless determination of issues of state law. Mr. Bromley contends Washington courts have special expertise in determining WLAD's interplay with state statutes concerning whistleblowing.

"[T]he concern addressed in this factor is with unsettled issues of state law." *Nat'l Chiropractic Mut. Ins. Co. v. Doe*, 23 F. Supp. 2d 1109, 1118 (D. Alaska 1998). Where a declaratory judgment action presents no compelling federal interest, such as a case where the sole basis of jurisdiction is diversity of citizenship, the first *Brillhart* factor favors dismissal. *Cont'l Cas. Co. v. Robsac*

ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT * 18

*Indus.*, 947 F.2d 1367, 1371 (9th Cir. 1991), *overruled on other grounds by Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998). "[N]eedless determination of state law issues alone may support remand," *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 975 (9th Cir. 2011), even in the absence of a similar state court proceedings. *See Huth v. Hartford Ins. Co. of the Midwest,* 298 F.3d 800, 802-04 (9th Cir. 2002).

Contrary to Mr. Bromley's assertions, his WLAD claim does not present an unsettled issue of Washington law.

Generally, WLAD forbids employment discrimination "because of race, creed, color, national origin, citizenship or immigration status, sex, honorably discharged veteran or military status, sexual orientation, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a person with a disability." RCW 49.60.030(1). WLAD also prohibits employers from discriminating against an employee for opposing any practice forbidden by WLAD. RCW 49.60.210(1).

While it is also a violation of WLAD for "*a government agency or government manager or supervisor* to retaliate against a whistleblower as defined in chapter 42.40 RCW," RCW 49.60.210(2) (emphasis added), "whistleblower" is not otherwise a protected status. Thus, so long as an employee's whistleblowing did not concern a practice otherwise forbidden by WLAD, and an employer is not a

government agency, manager, or supervisor, WLAD does not prohibit retaliation against whistleblowers.[1] *See Alonso v. Qwest Commc'ns Co.*, LLC, 178 Wn. App. 734, 753-54, 315 P.3d 610 (2013) (holding that a plaintiff who reported corruption, mistreatment, and vulgar language to company hotline, but not discrimination based on his protected status, could not demonstrate a prima facie WLAD retaliation claim).

Still, QCS's request for declaratory judgment presents no compelling federal interest and is solely based on diversity of citizenship. Thus, this factor favors dismissal.

The second *Brillhart* factor concerns forum shopping. Despite Mr. Bromley's claims to the contrary, this case presents no indication of forum shopping. On September 10, 2024, Mr. Bromley made a legal threat against QCS if they did not pay him an additional $100,000 settlement within 10 days. When 10 days passed and Mr. Bromley did not follow up his threat with a lawsuit, it was understandable for QCS to take action itself to resolve the controversy. As QCS's

---

[1] Instead of WLAD, the Washington tort of wrongful discharge in violation of public policy provides a terminated employee a cause of action for whistleblower retaliation. *Dicomes v. State*, 113 Wn.2d 612, 618, 782 P.2d 1002 (1989).

ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT * 20

1  actions cannot be described as forum shopping, this factor does not favor

2  dismissal.

3       The third *Brillhart* factor concerns the avoidance of duplicative litigation.

4  Here, there is no risk of duplicative litigation as there is no lawsuit filed in state

5  court. Should the Court rule on QCS's request, there will be no risk of

6  contradictory or duplicative judgments. This factor does not favor dismissal either.

7       The *Brillhart* factors are not exhaustive. *Dizol*, 133 F.3d at 1225 n.5. Other

8  considerations include "whether the declaratory action will settle all aspects of the

9  controversy; whether the declaratory action will serve a useful purpose in

10  clarifying the legal relations at issue; whether the declaratory action is being

11  sought merely for the purposes of procedural fencing or to obtain a 'res judicata'

12  advantage; or whether the use of a declaratory action will result in entanglement

13  between the federal and state court systems. In addition, the district court might

14  also consider the convenience of the parties, and the availability and relative

15  convenience of other remedies." *Id*. (quoting *Am. States Ins. Co. v. Kearns*, 15 F.3d

16  142, 145 (9th Cir. 1994) (J. Garth, concurring)).

17       Mr. Bromley contends that this Court's resolution of QCS' declaratory

18  judgment claim would not settle all aspects of the controversy or serve a useful

19  purpose, as the record is undeveloped, and he has stated he will not pursue a

20  WLAD claim. As discussed above, QCS need not rely on Mr. Bromley not

ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT * 21

changing his mind again as to his WLAD claim. A ruling that Mr. Bromley has no WLAD claim stemming from the No Re-Hire provision would settle all aspects of that controversy.

Mr. Bromley is correct that the record is thin. However, the crux of QCS's argument is that the No Re-Hire provision cannot violate WLAD because QCS did not discriminate against Mr. Bromley on the basis of some protected status, or for opposing some form of discrimination based on an employee's protected status. Mr. Bromley does not argue that he was discriminated against on the basis of a protected status,[2] and there is no evidence in the record suggesting otherwise. Therefore, the record is sufficient to rule that, as a matter of law, the No Re-Hire provision does not violate WLAD.

On the balance, the Court finds the exercise jurisdiction over this claim appropriate. While this case presents no compelling federal interest, the other factors do not favor dismissal of this claim. Retaining jurisdiction to declare that Mr. Bromley has no WLAD claim stemming from the Settlement Agreement's No

---

[2] Mr. Bromley's argues that being a whistleblower is a protected status, but as discussed above, WLAD does not prohibit discrimination against whistleblowers unless the employer is a government agency, manager, or supervisor.

ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT * 22

Re-Hire provision would provide finality to the controversy and settle all aspects of the dispute.

*WLAD Whistleblower Retaliation*

As stated above, WLAD does not prohibit whistleblower retaliation so long as the whistleblower was not opposing an employment practice otherwise prohibited by WLAD, and the employer was not a government agency, manager, or supervisor. Here, Mr. Bromley reported safety concerns concerning a pipeline. Retaliation for reporting safety concerns is not an employment practice prohibited by WLAD. Nor is QCS a government agency, manager, or supervisor. Therefore, Mr. Bromley has no valid WLAD claim stemming from the No Re-Hire clause of the Settlement Agreement.

Mr. Bromley finally contends that there is a question of fact as to whether the No-Hire clause in the Settlement Agreement was a result of his protected activity in asserting a WLAD claim in letters to the ALJ, and his September 10, 2024 demand letter. However, the record shows Mr. Bromley orally agreed to the No Re-hire provision on February 12, 2024, and that the No Re-Hire clause was present in all drafts of the Settlement Agreement. As the No Re-Hire provision predates Mr. Bromley's first assertion of a WLAD claim, it could not be retaliatory for his assertion of a WLAD claim. In the absence of a genuine dispute of fact, the Court grants QCS summary judgment.

**ACCORDINGLY, IT IS ORDERED:**

1.    Plaintiff QCS's Motion for Summary Judgment, **ECF No. 29**, is **GRANTED**.

2.    Defendant Steven Bromley's Motion for Summary Judgment, **ECF No. 22**, is **DENIED**.

The District Court Executive is hereby directed to enter this Order and furnish copies to all counsel.

DATED August 26, 2025.



REBECCA L. PENNELL
UNITED STATES DISTRICT JUDGE

ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT * 24